UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| REBECCA SANTORELLI,<br>  *Plaintiff*,<br><br>v.<br><br>HARTFORD LIFE AND ACCIDENT<br>INSURANCE CO.,<br>  *Defendant*. | No. 3:20-cv-1671 (JAM) |

**MEMORANDUM OF DECISION**

This case concerns the denial of benefits for plaintiff Rebecca Santorelli under a long-term disability policy issued by the defendant Hartford Life and Accident Insurance Company. Santorelli was diagnosed with granulomatosis, a vascular disorder. After she fell ill, Hartford Life found that Santorelli's illness did not prevent her from doing her occupation. So it denied her claim.

Santorelli now seeks judicial review of the denial. On the basis of the parties' submissions, I conclude that Santorelli's illness left her immunocompromised and forced her to work from home. But in denying long-term disability benefits, Hartford Life did not address whether an essential duty of Santorelli's occupation was for her to work from her office rather than from her home. Therefore, I will remand for Hartford Life to consider this issue and to decide anew whether Santorelli qualifies for long-term disability benefits.

**BACKGROUND**

Santorelli was a program manager at Amtrust, an insurer.[1] In May 2019, she fell severely ill.[2] After suffering 11 days of "debilitating" foot pain and numbness, she checked in to a

---

[1] Administrative Record (Doc. #38) at 140, 1483.
[2] *Id.* at 435.

hospital and was diagnosed with granulomatosis.[3] She spent 12 days in the hospital, but eventually her illness stabilized and she was released.[4]

After Santorelli fell ill, she took medical leave from work. And later that year, Amtrust cut her position.[5] She therefore sought disability benefits from her Hartford Life policy.[6] At first, Santorelli asked for and received short-term benefits.[7] But they expired in November 2019.[8] So she applied for long-term benefits. In December 2019, however, Hartford Life denied her long-term coverage, reasoning that her illness would not prevent her from working an office job.[9]

Santorelli appealed. But in August 2020, Hartford Life affirmed its decision.[10] First, it found that Santorelli's job of program manager was "[s]edentary" and did not require travel.[11] It then reviewed her medical records to conclude that she did not have a "medical impairment of the severity that would preclude occupational functioning."[12] In reaching this conclusion, Hartford Life relied heavily on a report from Dr. Benjamin Kretzmann, a consultant it hired to review her chart. Dr. Kretzmann thought that Santorelli could work at a desk for six hours a day. Although Santorelli had submitted a report from a physical therapist who claimed that she could sit for only *three* hours a day, Hartford Life agreed with Dr. Kretzmann that the therapist was not credible.[13]

---

[3] *Id.* at 165, 177.
[4] *Id.* at 165–66, 638.
[5] *Id*. at 223.
[6] *Id.* at 2, 22, 34.
[7] *Id.* at 129, 143.
[8] *Id*. at 143.
[9] *Id.* at 280, 283.
[10] *Id.* at 263.
[11] *Id.* at 264.
[12] *Id.* at 267.
[13] *Id.* at 266.

Santorelli also submitted evidence that her granulomatosis had damaged her immune system and left her unable to work around other people in an office.[14] But when Hartford Life denied her appeal, it did not address this issue.

Santorelli has now filed this lawsuit seeking review of Hartford Life's decision under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a).

## DISCUSSION

Although the parties have styled their moving papers as cross-motions for summary judgment, they have agreed to a bench trial and to my resolving the disputed issues based on the papers they have submitted.[15] *See O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 642 F.3d 110, 116 (2d Cir. 2011). Accordingly, this ruling constitutes explicit findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a).[16]

Santorelli and Hartford Life agree that I must review the evidence *de novo* and decide whether she has proven by a preponderance that she deserves benefits under her policy. *See In re DeRogatis*, 904 F.3d 174, 187 (2d Cir. 2018); *Booth v. Hartford Life & Acc. Ins. Co. of Am.*, 2009 WL 652198, at *7 (D. Conn. 2009). Under Santorelli's policy, she deserves benefits only if, during the first 30 months after her illness, she was "prevented from performing one or more of the Essential Duties of … Your Occupation."[17] By "Your Occupation," the policy means Santorelli's occupation "as it [wa]s recognized in the general workplace"—not "the specific job

---

[14] *Id.* at 459, 1481.
[15] Doc. #39.
[16] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[17] AR48 (requiring her to be disabled during the "Elimination Period" and the two years after it); *id.* at 36 (defining the "Elimination Period" as 180 days). At times, Hartford Life suggests that I should consider only Santorelli's condition during the elimination period. *See, e.g.*, Doc. #43 at 8–9, 13. But at other times, it cites evidence from after that period. *See, e.g.*, Doc. #40-1 at 14 (citing AR641–42). For the sake of completeness, I will consider all the evidence of Santorelli's condition. But the evidence from both periods agrees, and if I limited my review to the elimination period, my findings would not change.

[she was] performing for a specific employer."[18] An "Essential Duty" of that occupation is one that "1) is substantial, not incidental; 2) is fundamental or inherent to the occupation; and 3) cannot be reasonably omitted or changed."[19]

In denying Santorelli's appeal, Hartford Life implicitly found that the only relevant essential duty of her occupation was working at a desk. It also found that after she fell ill, she soon improved enough to once again perform that duty.[20] Santorelli objects to these conclusions on two broad grounds. First, she argues that despite Hartford Life's finding, she was no longer able to work a desk job after she fell ill. And second, she argues that her occupation has other core duties—traveling and going into the office—that she could not perform because she was immunocompromised.

I agree with Harford Life that Santorelli's occupation did not require her to travel. I also agree with Hartford Life that her illness did not stop her from working a desk job. On the other hand, I agree with Santorelli that she needed to work that desk job from home. Thus, Hartford Life should have considered whether working *from an office* was an essential duty of Santorelli's occupation. Because it did not, I will remand the case for further analysis.

### *Santorelli could work a desk job*

Santorelli's main argument is that ever since she fell ill, she has endured too much pain and fatigue to work any sort of desk job. I do not agree. Granulomatosis is a serious disease, and I have no doubt that it has left Santorelli with unpleasant symptoms. But the evidence conclusively shows that soon after Santorelli left the hospital, she had recovered enough to work a desk job.

---

[18] AR52.
[19] *Id.* at 49.
[20] *Id.* at 183–84.

Most persuasively, Santorelli has twice *admitted* this. In November 2019, she told a Hartford Life agent that working "from home on [a] computer would not be a huge problem," because she could sit for "a couple hours" "as long as [she could] put [her] feet up."[21] And in December 2019, she repeated that "she c[ould] work in [a] sed[entary] position" as long as she was "at home."[22] She did not claim that she was too tired or in too much pain to work at all.

These statements are corroborated by Santorelli's medical evidence. According to her doctors' notes, her foot pain was "diminished" within a few weeks of her leaving the hospital in June 2019, was merely a "discomfort" by July 2019, and was gone in August 2019.[23] By September 2019, her general physician reported that she was "healthy" and in "no acute distress."[24] She again reported not having pain in October 2019 and January 2020, and one of her doctors concluded in January 2020 that she was "doing really well overall."[25] At one point, her doctor noted that she had felt "marked fatigue," but only because "she ha[d] been working more than she should."[26]

Moreover, when Santorelli's doctors explicitly considered how long she could sit, their answers were unanimous: long enough to work a desk job. In June and July 2019, for instance, Dr. Ruben Peredo (the attending physician at the hospital) reported that Santorelli could sit "[c]ontinously with standard breaks."[27] In November 2019, her vascular surgeon Dr. Courtney Warner said that she could sit for "6 hours at a time" and for up to eight hours a day.[28] And in June 2020, her treating physician Dr. Khoa Ngo agreed that she could sit for eight hours at a

---

[21] *Id.* at 245.
[22] *Id.* at 228–29.
[23] *Id.* at 486, 513, 529.
[24] *Id.* at 453–54.
[25] *Id.* at 469, 1505.
[26] *Id.* at 1496.
[27] *Id.* at 172, 181.
[28] *Id.* at 1476.

time.[29] Dr. Ngo even expressly agreed that Santorelli did *not* "have a reasonable medical need to be absent from a full time work schedule."[30]

Santorelli points out that Harford Life's own expert file reviewer, Dr. Kretzmann, found that she could sit for only six hours a day, not eight.[31] I find this figure less credible than the eight-hour figure that Santorelli's treating physicians converged on. But even if I credited Dr. Kretzmann's estimate, it would not change my conclusion: someone who can sit for six hours a day can complete a full workweek. *Cf. Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (noting that under the Social Security Administration's regulations, "sedentary work" requires "sitting for six hours in an eight-hour work day").

Santorelli points to some conflicting evidence that makes her symptoms seem worse. But none of it is persuasive. First, she relies heavily on a March 2020 "functional capacity evaluation" by a physical therapist. This report asserted that Santorelli could sit for only three hours a day and 17 minutes at a time.[32] I am skeptical. The report does not explain its methodology clearly. It seems internally contradictory—it also found that Santorelli had "a low pain focus" and pain of "0/10" when she sat.[33] And it is an outlier. I find it less credible than Santorelli's own statements and those of her doctors.

Second, Santorelli relies on statements from Dr. Ngo. In some of his reports, she notes, he emphasized her pain and fatigue more than the other doctors did.[34] But even so, his observations are mostly consistent with my conclusion that Santorelli could work a desk job. For example, he stressed that Santorelli had "pains in her feet after *standing* … and *walking* long

---

[29] *Id.* at 641.
[30] *Id.* at 643.
[31] *Id.* at 342.
[32] *Id.* at 394, 398.
[33] *Id.* at 395, 398.
[34] *See, e.g., id.* at 459, 639.

6

distances."³⁵ But he did not say that Santorelli had trouble *sitting*, and indeed, he later confirmed that she could sit for eight hours a day and work a regular schedule.³⁶

Dr. Ngo also asserted in 2020 that Santorelli had experienced only a "momentary quiescence of [her] pain around July 2019" that ended once she tapered off her pain-suppressing steroids.³⁷ But I do not credit this statement. Not only does it contradict reports from three other doctors who thought that Santorelli was doing very well late into 2019, but it also contradicts Dr. Ngo's own contemporaneous statement that Santorelli was "doing well on her steroid taper" in August 2019.³⁸ In sum, I find that Santorelli's granulomatosis did not leave her so pained and fatigued that she was unable to work a desk job.

Santorelli also argues that her disease stopped her from other activities, like standing and walking. But I need not consider these issues. As long as Santorelli could have worked from home, she would not have had to stand or walk any more than she did in her daily life. On the other hand, if Santorelli could *not* have worked from home, then she should get disability benefits regardless of her ability to stand or walk, because she was immunocompromised. I will turn to that issue now.

### *Santorelli needed to work from home*

After Santorelli fell ill, she needed to go on "strong immunosuppressants to keep [her] disease at bay."³⁹ Dr. Ngo thus "highly recommend[ed] that [she] limit her contact with others."⁴⁰ Dr. Peredo agreed that Santorelli had to "work at home" because she was "too immunosuppressed to be around too many people."⁴¹

---

³⁵ *Id.* at 461 (emphasis added).
³⁶ *Id.* at 641, 643.
³⁷ *Id.* at 331.
³⁸ *Id.* at 453–54, 469, 486, 1498, 1505.
³⁹ *Id.* at 637.
⁴⁰ *Ibid.*; *see also id.* at 459.
⁴¹ *Id.* at 1481.

Hartford Life disagrees with these recommendations. But it does not cite any conflicting medical evidence. Instead, it points out that Santorelli has not lived in a perfect bubble since she fell ill. For example, she has gone grocery shopping, traveled from New York to Florida, attended fairs with her husband, and visited a physical therapist and notary.[42] These examples, Hartford Life argues, prove that Santorelli must not have been as concerned about her weakened immune system as she claims.

This argument is too speculative for me to credit. How often did Santorelli do these activities? Were the fairs indoors or outdoors? Did she take a plane with other passengers to Florida, or drive alone? Without these details, I cannot begin to judge whether Santorelli's activities were as risky as business travel or going into the office every day. They shed little light on the issue, and I find the recommendations of her doctors to be much more persuasive. I therefore conclude that after Santorelli fell ill, it was medically necessary for her to work from home.

But that does not necessarily mean that she deserves benefits. She also needs to show that leaving home was one of her occupation's "essential duties." It was, Santorelli argues, because her job required travel. I do not agree. Her only evidence is that her specific job at Amtrust required travel.[43] But that is not enough to meet her burden. Under the terms of her policy, she must prove that travelling was required for the occupation of program manager "as it is recognized in the general workplace." Yet Santorelli offers no evidence that all, or even most, program managers need to travel. She has therefore failed to show that travelling is a "fundamental or inherent" part of her job.

---

[42] *Id.* at 245, 249, 394, 1396.
[43] *Id.* at 1485.

Hartford Life, by contrast, offers the right type of evidence. It cites the Department of Labor's Dictionary of Occupational Titles, which classifies "program manager" as "sedentary" and does not mention a travel requirement.[44] While this evidence is thin, it is the only evidence in the record that responds to the policy language. I therefore credit this evidence over Santorelli's and find that travelling is not an essential duty of her occupation. *See Kay v. Hartford Life & Accident Ins. Co.*, 2021 WL 1378742, at *9 (S.D. Cal. 2021) (holding, in a case involving identical policy language, that the plaintiff could not "meet[ ] her burden" with evidence of her "specific job description" because this was "not the proper test under the Policy"); *Becker v. Hartford Life & Acc. Ins. Co.*, 2006 WL 1360928, at *6–7 (M.D. Fla. 2006) (holding, in a case involving identical policy language, that Hartford Life was correct to credit the Dictionary's definition of the plaintiff's job over his actual job description); *Gearhart v. Hartford Life Ins. Co.*, 2010 WL 4777545, at *5 (W.D. Va. 2010) (same under an abuse-of-discretion standard).

But even though Santorelli did not need to travel, there is another reason why she might deserve benefits. Santorelli's immunity issues did not just stop her from business travelling; they made it unsafe for her to work in an office. So if going into the office was an "essential duty" of her occupation, then she was disabled.

Was it? Hartford Life did not address this issue when it denied her benefits. "Under *de novo* review I could, of course, try to decide this question myself." *Hughes v. Hartford Life & Accident Ins. Co.*, 368 F. Supp. 3d 386, 403 (D. Conn. 2019). But there is not much to go by. There is little evidence in the record about whether even Santorelli's specific job at Amtrust let her work from home.[45] And there is no evidence about whether program managers can work

---

[44] *Id.* at 206.
[45] *Compare id.* at 547 (noting that right before Santorelli went to the hospital, she was "mostly working from

9

from home generally. Given how sparse the record is, "I think the best course of action is to remand the case to Hartford Life for a speedy full and fair reconsideration" of whether Santorelli's occupation allowed her to work from home. *Ibid.*; *see also Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 490 (2d Cir. 2013) (remand remedy).

## CONCLUSION

For the reasons set forth in this ruling, Santorelli's motion for summary judgment (Doc. #41) is GRANTED insofar as the case is remanded to Hartford Life for the limited review of whether working in an office is an "essential duty" of Santorelli's occupation. Hartford Life's motion for summary judgment (Doc. #40) is DENIED. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 1st day of September 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

home"), *with id.* at 223–24 (noting that Amtrust later refused to rehire her because of her limitations).